**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMEREX ENVIRONMENTAL TECHNOLOGIES, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Civil Action No. 11-349 |
| v. | ) ) | Judge Cathy Bissoon |
| JOHN FOSTER, | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

### I.    MEMORANDUM

Pending before the Court is Plaintiffs Amerex Environmental Technologies, Inc.

("Amerex"), Brian McMahon, and Joe Pircon's Motion to Amend Complaint (Doc. 34).  For the

reasons stated herein, the Court will deny Plaintiffs' motion.

### BACKGROUND

Plaintiffs allege in their Complaint (Doc. 1) that Defendant John Foster, a shareholder

and former employee of Plaintiff Amerex, accepted employment with Plaintiff Amerex's

competitor, Amerair Industries LLC.  See Compl. (Doc. 1).  Plaintiffs allege that Defendant's

acceptance of such employment breached an employment agreement with Plaintiff Amerex,

breached fiduciary duties owed to Plaintiffs, and will lead to inevitable use and disclosure of

trade secrets owned by Plaintiff Amerex.  See id.

Plaintiffs seek leave to amend their complaint to add a count for "Fraud, Deceit, and

Misrepresentation."  According to Plaintiffs, this proposed claim is based on testimony from

Defendant John Foster's December 2011 deposition.  See Mot. to Amend (Doc. 34).  Plaintiffs

further assert that they learned for the first time at Defendant's deposition that Defendant claims

he owns certain technology.  See id. at 2.

1

Plaintiffs allege that prior to and during Defendant's employment by Plaintiff Amerex,

Defendant failed to disclose that he claims to own the technology at issue. Specifically,

Plaintiffs seek to add the following allegations to their complaint:

19. During Foster's employment with Amerex he was instructed to prepare a document containing all the software – programs – and intellectual property he used in performance of his duties for Amerex, and he prepared a document entitled "John Foster Technology" and provided same to Amerex and its Board, Officers, Directors, and other shareholders.

20. One purpose of the document was for use in a presentation in a potential acquisition (Austrian Energy) in which Foster participated by presenting to the other party the types of intellectual property - software – and programs that Amerex could provide for use in the new business if the acquisition proceeded.

21. Foster never made any disclosures, representations or caveats to either Amerex, its Board, Officers, Directors, and other shareholders, or to Austrian Energy to the effect that the software – programs – and intellectual property he used in performance of his duties for Amerex were not the property of Amerex but were owned separately by Foster (as he now claims).

22. Foster also participated in the presentation and representations made to Amerex, Pircon, and McMahon, at the time that Amerex purchased Foster's previous employer SP Environmental from its owner Stevens Painton, and signed the Agreement for Sale of Business Assets which included transfer to Amerex of:

The name SP Environmental, customer lists, records, project files, proposal files, all related CDMG drawings, estimates, vendor quotes, licenses and permits…, trademarks, trade names, the web domain name…, and goodwill.

23. In the same transaction as the Amerex purchase of SP Environmental's assets, Foster received monies for arranging the sale, received ownership interest in Amerex, and entered an Employment Agreement with Amerex.

24. Yet Foster again failed to make any disclosures, representations or caveats to either Amerex, its Board, Officers, Directors, and other shareholders to the effect that the software –

programs – and intellectual property he used in performance of his duties for SP Environmental including his work on its "project files, proposal files, all related CDMG drawings, estimates, vendor quotes" for SP Environmental were not the property of SP Environmental, or were not being purchased by Amerex, but were owned separately by Foster (as he now claims).

25. After this litigation began, Foster changed the name on his copy of the document "John Foster Technology" and added the word "owned" so that the document he produced in discovery was at that time (after this litigation began) now entitled "John Foster Owned Technology."

26. Foster admitted during his deposition:

8      Q So except for the numbers at the bottom of

9    the page, because we produced one and you produced

10  one, the only difference I see is in the title.

11  Do you see the difference?

12      A Yeah. Uh-huh.

13      Q When did you -- well, and the difference is

14  that the word "Owned" is inserted on JF 4, not present

15  on 155?

16      A Sure. I see that. Uh-huh.

17      Q When did you prepare JF 4?

18      A You know, I think it was prepared in

19  response to request for documents. I think -- and I

20  may even have a copy of this on -- on a disk or

21  something. I'd have to look to see where I might have

22  a copy of it. It's been a while since I remember it.

23      Q Okay. So it would be you who made the

24  change by inserting the word "Owned" on JF 4 that's

25  not present on Amerex Foster 155?

89

1      A Yes.

2      Q Okay. And you would have made that change

3

```
3    after this litigation started?
4         A Likely. Likely. I can't remember
5    specifically.
```

\* \* \*

### COUNT 5-Fraud, Deceit, and Misrepresentation

> 40. The allegations of Paragraphs 1 through 39 are incorporated herein by reference with the same force and effect as if set forth in full below.

> 41. The aforesaid conduct by Foster constitutes fraud, deceit, and misrepresentation which Foster knowingly made, upon which Foster intended Plaintiffs to rely, upon which Plaintiffs did so reasonably rely, and which has caused damages to Plaintiffs.

Proposed Am. Compl. 6-7, 10-11 (Doc. 34-1). In a supplemental brief requested by the Court, Plaintiffs clarified that "Plaintiffs' proposed fraud claim relates to the same intellectual property that is the subject of Plaintiffs' trade secrets claim." Pls.' Supp. Br. 1 (Doc. 41). Defendant opposes Plaintiffs' motion for leave to amend, asserting that Plaintiffs' proposed amendment is unduly delayed and would be futile. See Def.'s Reponse (Doc. 37).

In violation of the undersigned's Practices and Procedures, Plaintiffs filed a reply brief (Doc. 39), without first seeking leave of Court. Even if Plaintiffs' motion for leave were considered a "dispositive motion" (which it is not), for which reply briefs are permitted without leave of Court, Plaintiffs' reply brief was filed beyond the deadline and exceeds the five-page limit imposed by the Practices and Procedures. In this Court's Case Management Order (Doc. 29), dated October 28, 2011, all counsel in this case were ordered to familiarize themselves with the Practices and Procedures of the undersigned. Plaintiffs' counsel was again put on notice of the Practices and Procedures when he failed to follow them when filing a motion to compel. See Order denying Pls.' Mot. to Compel, Jan. 4, 2012 (Text Order).

Tangentially, the Court is troubled by Plaintiffs' counsel's continued disregard of the Practices and Procedures, despite repeated instructions to follow them. Perhaps the Court's prior instructions providing the specific URL where counsel could obtain a copy of the Practices and Procedures via the Internet were too complicated for counsel to follow. In order to avoid Plaintiff's counsel's apparent inability to follow instructions involving use of the Internet, an old-fashioned hard copy of the Practices and Procedures will be mailed to Plaintiffs' counsel via U.S. First Class Mail.

While the Court begrudgingly will consider the reply brief in ruling on Plaintiffs' motion for leave to amend, the Court finds the arguments proffered therein unpersuasive.

## ANALYSIS

### A. Legal Standard for Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave when justice so requires." The grant or denial of an opportunity to amend is within this Court's discretion. Foman v. Davis, 371 U.S. 178, 182 (1962). While this Court should "freely give leave" to amend, this Court may deny leave for reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Id.

### B. Undue Delay

This Court agrees with Defendant that Plaintiffs' proposed amendment is untimely for undue delay. Plaintiffs assert that, until Defendant's deposition in December 2011, they were unaware of Defendant's claim of ownership of software and programs that Plaintiffs allege are trade secrets owned by Plaintiff Amerex. See Mot. to Amend 2 (Doc. 34). In Defendant's Answer, Defenses, and Counterclaims, filed on April 11, 2011, Defendant asserted as an

affirmative defense that: "By reason of education and work experience obtained on or before May 1, 2004, Foster already possessed extensive knowledge and experience of the business and technical aspects of the industry that is the subject of this lawsuit, which knowledge and experience belongs to Foster and not to any of the Plaintiffs." Answer 10 (Doc. 6). Plaintiffs, therefore, were on notice of Defendant's claim of ownership of the technology as early as April 11, 2011.[1]

Further, Plaintiffs' proposed fraud claim relates to the technology specifically outlined in a document entitled "John Foster Owned Technology," produced by Defendant to Plaintiffs on September 1, 2011. See Def.'s Reponse 3 (Doc. 37).[2] Plaintiffs allege that Defendant altered the document's title from "John Foster Technology" to "John Foster Owned Technology." Proposed Am. Compl. ¶ 25 (Doc. 34-1). Plaintiffs assert that, despite Defendant producing the altered document on September 1, 2011, Plaintiffs were unaware of Defendant's claim of ownership until Defendant's deposition in December 2011. Mot. to Amend 3 (Doc. 34); Pls.' Reply 5 (Doc. 39). Plaintiffs explain:

> Foster never explained, testified, or provided any explanation of his new claim of ownership until his deposition. Amerex could only speculate why the title of the document had been changed, or indeed by whom it had been changed. . . . Surely Foster cannot be allowed to change documents in response to discovery and yet to argue Plaintiffs are somehow not diligent in failing to amend their Complaint before even finding out the how and why of the 'change.'

Pls.' Reply 5-6 (Doc. 39).

Plaintiffs' argument is unpersuasive. The meaning of "John Foster Owned Technology" is obvious. Prior to Defendant's deposition, Plaintiffs had their own copy of the original

---

[1]    As previously noted, Plaintiffs have clarified that their proposed fraud claim relates to the same technology that is the subject of their trade secrets claim. Pls.' Supp. Br. 1 (Doc. 41).

[2]    Plaintiffs in their reply did not dispute Defendant's assertion that the document was produced to Plaintiffs on September 1, 2011.

document and knew that the document title had been changed.  See Proposed Am. Compl. ¶ 26 (Doc. 34-1).  How or why the document was altered does not shed light on the already obvious meaning of "John Foster Owned Technology."  The deposition testimony cited by Plaintiffs at best demonstrates that Defendant inserted the word "Owned," probably in response to a request for documents in this litigation.  See Proposed Am. Compl. ¶ 26 (Doc. 34-1).  Those revelations add nothing to the information already available to Plaintiffs indicating that Defendant claims ownership of the technology described in the document.

Even accepting as correct Plaintiffs' notion that Plaintiffs were not on notice of Defendant's claim of ownership, the cited deposition testimony does not suddenly reveal a claim of ownership.  Working from Plaintiffs' premise that the document entitled "John Foster Owned Technology" required further explanation, the cited testimony provides no additional explanation that could have suddenly revealed to Plaintiffs a before-unknown claim of ownership.  If Plaintiffs' position is correct, Plaintiffs still would have insufficient information to support its allegation that Defendant claims to own the technology at issue.

Defendant's Answer, Defenses, and Counterclaims (Doc. 6), filed on April 11, 2011, and Defendant's document entitled "John Foster Owned Technology," produced on September 1, 2011, put Plaintiffs on notice of Defendant's ownership claim.  The December 2011 deposition testimony cited by Plaintiffs did not suddenly reveal additional information to explain Defendant's ownership claim.  The deposition testimony, therefore, cannot justify Plaintiffs' undue delay until January 19, 2012, to request leave to amend their complaint.

This case was filed just shy of a year ago.  Only a month after the case was filed, and before discovery commenced, Plaintiffs were on notice of Defendant's claimed ownership of the technology at issue in this case, by virtue of the Defendant's Answer.  Discovery has been

extended twice in this case and is scheduled to end in one week. The Court will not permit

counsel to throw a litigation "monkey wrench" into the case at this late juncture.

**C.** **Futility of Amendment**

Even if Plaintiffs' proposed amendment were timely, amendment would be futile.

Plaintiffs appear to allege two instances of fraud. The first alleged instance of fraud occurred

prior to Defendant's employment with Plaintiff Amerex. Plaintiffs allege that Defendant

participated in presentations and representations made to Plaintiff Amerex when it acquired

Defendant's prior employer, SP Environmental, and that Defendant signed the Agreement for

Sale of Business Assets that transferred assets from SP Environmental to Plaintiff Amerex.[3]

Proposed Am. Compl. ¶ 22 (Doc. 34-1). Plaintiffs allege in their proposed amended complaint

that Defendant did not disclose at this time that he, and not SP Environmental, owned certain

technology, and that Plaintiff Amerex, therefore, was not acquiring that technology. Id. at ¶ 24.

In contrast, Plaintiffs assert in their reply brief that Defendant affirmatively "represented that the

intellectual property at issue in this case was included among the assets being sold to Amerex."

Pls.' Reply 2 (Doc. 39).

Plaintiffs' first fraud theory is flawed, whether the theory is based on a failure to disclose

or an affirmative misrepresentation. Plaintiffs allege that Plaintiff Amerex's acquisition of SP

Environmental's assets was governed by an Agreement for Sale of Business Assets

("Agreement"). Proposed Am. Compl. ¶ 22 (Doc. 34-1). Whether Plaintiff Amerex or

Defendant now owns the currently disputed technology depends on the provisions of the

---

[3]   SP Environmental's assets were purchased by A-4 Acquisitions Corp., which subsequently
      merged with the corporation that became Plaintiff Amerex. See Agreement for Sale of
      Business Assets (Doc. 41-1); Complaint ¶ 2 (Doc. 1). For ease of reference, the Court will
      refer to A-4 Acquisitions Corp. as Plaintiff Amerex.

Agreement.  If Plaintiff Amerex owns the technology, then Defendant did not commit fraud because there was no misrepresentation.

If Defendant owns the technology, Plaintiff Amerex may have been the victim of poor contract drafting or insufficient due diligence efforts, but not the victim of fraud.  Plaintiffs allege that the technology at issue was included in the sale of SP Environmental's assets pursuant to the Agreement's provision that:

> Seller agrees to sell, . . . customer lists, records, project files, proposal files, all related CDMG drawings, estimates, vendor quotes, licenses and permits (to the extent assignable), trademarks, trade names, the web domain name <spenvironmental.com>, and goodwill herein described . . . .  The assets shall be conveyed by a Warranty Bill of Sale.

Agreement § 3.00 (Doc. 41-1 at 1); See Proposed Am. Compl. ¶ 22 (Doc. 34-1).  Exhibits A and B to the Agreement list specific assets included in the sale.  See Exhs. A & B to Agreement (Doc. 41-1 at 7-8).  The Agreement also includes an integration clause, providing that:  "This Agreement comprises the entire agreement between the parties and may be modified only by a writing signed by the parties."  Agreement § 15.00 (Doc. 41-1 at 11).

Whatever Defendant did or did not represent in discussions leading to the Agreement is immaterial, because the assets included in the sale were specifically addressed in the Agreement and the Agreement includes an integration clause.  See, e.g., HCB Contractors v. Liberty Place Hotel Assocs., 652 A.2d 1278 (Pa. 1995) (holding that fraudulent inducement claims based on alleged prior fraudulent oral representations "regarding a subject that was specifically dealt with in the written contract" are precluded by the parol evidence rule); 1726 Cherry Street P'ship v. Bell Atl. Props., Inc., 653 A.2d 663 (Pa. Super. Ct. 1995) (same); Sunquest Information Sys., Inc. v. Dean Witter Reynolds, Inc., 40 F. Supp. 2d 644, 651-66 (W.D. Pa. 1999) (Smith, J.)

(same).[4]  If Plaintiff Amerex believed certain technology was critical to the sale, Plaintiff

Amerex should have insisted on more specific language in the Agreement.[5]  See 1726 Cherry

Street P'ship, 653 A.2d at 670 ("If the [plaintiffs] intended to rely on what they now contend was

a centrally important representation conveyed by [the defendant] in the course of the negotiations

over a multimillion dollar commercial real estate transaction, then the [plaintiffs] should have

insisted that the representation be set forth in their integrated written agreement.").

The second alleged instance of fraud occurred while Defendant was employed by

Plaintiff Amerex.  Plaintiffs allege that Defendant prepared the "John Foster Technology"

document "for use in a presentation in a potential acquisition (Austrian Energy) in which Foster

participated by presenting to the other party the types of intellectual property – software – and

programs that Amerex could provide for use in the new business if the acquisition proceeded."

Proposed Am. Compl. ¶ 20 (Doc. 34-1).  Plaintiffs allege that Defendant "never made any

disclosures, representations or caveats to either Amerex, its Board, Officers, Directors, and other

shareholders, or to Austrian Energy to the effect that the software – programs – and intellectual

property . . . were not the property of Amerex but were owned separately by Foster (as he now

claims)."  Id. at ¶ 21.

This second theory of fraud is flawed.  Plaintiffs generally allege that "[t]he aforesaid

conduct by Foster constitutes fraud, deceit, and misrepresentation which Foster knowingly made,

---

[4]  The parties apparently agree that Pennsylvania law applies, at least with respect to Plaintiffs'
first theory of fraud.  See Def.'s Response 3 (Doc. 37) (citing Pennsylvania law); Pls.' Reply
3-4 (Doc. 39) (same).

[5]  The Court is not deciding whether the technology at issue was included as part of the sale of
SP Environmental's assets.  The Court merely finds that, under the facts alleged by Plaintiffs,
whatever assets were included in the sale is controlled by the Agreement and not by any
representations made in negotiations leading to the Agreement.  The Court further notes that
even if Plaintiffs' fraud theory were viable, it appears any cause of action would be against
SP Environmental and not Defendant.

upon which Foster intended Plaintiffs to rely, upon which Plaintiffs did so reasonably rely, and which has caused damages to Plaintiffs." Id. at ¶ 41. But none of Plaintiffs allegations suggest that Defendant intended Plaintiffs to rely upon his alleged failures to disclose information during the presentation to Austrian Energy, that Plaintiffs relied upon such failures to disclose, or that Plaintiffs suffered damages as a result of such reliance.

## CONCLUSION

For all of the reasons stated above, Plaintiffs Amerex, Brian McMahon, and Joe Pircon's Motion to Amend Complaint (Doc. 34) is denied.

## II.    ORDER

For the reasons stated above, the Court hereby **ORDERS** that Plaintiffs Amerex Environmental Technologies, Inc., Brian McMahon, and Joe Pircon's Motion to Amend Complaint (Doc. 34) is **DENIED**.

**IT IS SO ORDERED**.

s/ Cathy Bissoon
Cathy Bissoon
United States District Judge

February 21, 2012

cc (via e-mail):

All counsel of record.