# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMEREX ENVIRONMENTAL TECHNOLOGIES INC., JOE PIRCON, AND BRIAN McMAHON | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 11-349 |
| JOHN FOSTER, | ) ) ) ) | Judge Cathy Bissoon |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

### I.  MEMORANDUM

Amerex Environmental Technologies Inc. ("Amerex"), Joe Pircon and Brian McMahon (collectively "Plaintiffs") bring the instant lawsuit against Defendant, John Foster, for breach of contract, breach of fiduciary duty, and misappropriation of trade secrets related to Defendant's alleged breach of an Employment Agreement. Plaintiffs seek injunctive relief and unspecified monetary damages. Defendant has filed a counterclaim for invasion of privacy (intrusion upon seclusion), and seeks a declaratory judgment regarding his fiduciary duties to Plaintiffs and the redemption of Amerex's stock options.

Before the Court are multiple motions for summary judgment, all of which are ripe for disposition. Plaintiffs have filed a motion for summary judgment on their breach of contract claim (Docket No. 56), a motion for summary judgment on Defendant's counterclaims for invasion of privacy and a request for declaratory judgment (Docket No. 54). Defendant has filed a motion for partial summary judgment on Plaintiffs' breach of contract claim, misappropriation

1

of trade secrets claim and breach of fiduciary duty claim, as well as a motion for summary judgment on Defendant's request for declaratory judgment (Docket No. 60).

For reasons stated below, the motion for summary judgment filed by Plaintiffs on the breach of contract claim will be denied; the motion for summary judgment filed by Plaintiffs on Defendants' counterclaims will be granted in part and denied in part. Additionally, the motion for summary judgment filed by Defendant on Plaintiffs' claims will be granted in part and denied in part.

**Factual Background**

Amerex is an Illinois corporation engaged in air pollution control technology. Compl. ¶ 2 (Docket No. 1). Plaintiff Joe Pircon is the President and Chief Executive Officer of Amerex and Plaintiff Brian McMahon is the Secretary and Chief Financial Officer of Amerex. *Id*. Defendant is a former Vice President of Technology Sales of Amerex, and worked for the company until he tendered his resignation on or about December 4, 2010 (effective January 4, 2011). *Id*. ¶¶ 9-13.[1] On May 1, 2004, Defendant executed an Employment Agreement ("Employment Agreement") with Amerex containing certain restrictive covenants, including a non-compete clause. *Id*. In addition, on January 1, 2007, Plaintiff became a shareholder in Amerex pursuant to a Shareholders Agreement ("Shareholders Agreement"). Compl. Ex. B.

The crux of Plaintiffs' claims is that Defendant breached the terms of his Employment Agreement, his fiduciary duty to Amerex and misappropriated trade secrets when he resigned his position in December 2010 and accepted employment with Amerex's competitor Amerair Industries LLC ("Amerair"). Compl. ¶¶ 2-6. Plaintiffs allege that at some point after his resignation Defendant copied and later used Amerex's drawings and presentation slides in his

---

[1] Defendant became employed with Amerex's corporate predecessor A-4 Acquisition Corporation on May 1, 2004. A-4 Acquisition went through a series of mergers and in January 2011 changed its name to Amerex Environmental Technologies Inc. Compl. Ex. A.

2

new position with Amerair. *Id*. Plaintiffs further allege that in his position with Amerair, Defendant communicated confidential information regarding Amerex's clients to potential Amerair clients. *Id*. Defendant maintains that he did not breach the terms of the Employment Agreement and any fiduciary duty owed to Amerex was not breached and ended upon his resignation. *See* Answer (Docket No. 6). Defendant has also asserted an invasion of privacy counterclaim against Plaintiffs alleging that Amerex accessed his personal email through his company-issued cellular telephone. *Id*. Furthermore, Defendant asserts a counterclaim that Plaintiffs violated the terms of the Shareholders Agreement by refusing to tender back his Amerex stock options upon his request. *Id*.

**Analysis**

   A. <u>Breach of Contract Claim</u>

Both parties seek summary judgment on the breach of contract claim. In its motion, Plaintiffs argue that Defendant breached the non-disclosure provision of the Employment Agreement (¶¶ 8.2 and 9), both during, and for a period of time following, his employment. Pls.' Motion pp. 2-3. Defendant is alleged to have used Amerex's property at his new employer (Amerair) and disclosed confidential Amerex customer information. *Id*. Plaintiffs seek injunctive relief to prohibit the future use of Amerex's property and further disclosure of confidential Amerex customer information. *Id.*

In his motion, Defendant argues that no enforceable contract exists between him and Amerex, and that no evidence exists to establish breach of the six-month non-compete provision (¶8.1) of the Employment Agreement or breach of the non-disclosure provision (¶8.2). Def.'s Motion.

Both Plaintiffs' motion for summary judgment and Defendant's motion for summary judgment are denied because genuine issues of material fact exist regarding Defendant's alleged breach of the cited provisions. The provisions at issue read as follows:

¶ 8.1:

Employee expressly promises and agrees that during the term of Employee's employment under this Agreement and for a period of time immediately following the termination of such employment as set forth above, Employee will at no time, directly or indirectly, except as specifically authorized in writing by Employer, for himself, or on behalf of or in association with another or others, as an individual, or on his/her own account, or as an employee, agent, advisor, consultant, independent contractor, representative, salesman, or firm; or as a member of any partnership, or joint venture, or as an officer or director of any
corporation; or otherwise in any capacity whatsoever:
(a) Develop, sell, solicit the purchase of, design, distribute, formulate, produce, process, mix, market, advertise, and/or manufacture equipment and chemical similar to Employers, including but not limited to, coal dust suppressants, pet coke dust suppressants, agglomeration equipment, any equipment or chemical processes in development or being researched, antifreeze agents, dust collection/ containment devices and equipment which are comparable to or compete directly with those of Employer, or render design, engineering and maintenance services in connection therewith for sale and distribution to Employer's customers, whether governmental, institutional, industrial, commercial, retail, wholesale or otherwise;
(b) Solicit, divert, or make attempt to take away any of the customers or accounts of Employer for the purpose of providing a competing product or service;
(c) Engage in, manage, control, own, operate, or participate in the management, operation, ownership, or control of any entity which engages in the business of developing, selling, manufacturing, formulation, producing, designing, processing, mixing, marketing, or distributing, of any products or services similar to Employer's, including but not limited to those described in 8, (a) above.

¶ 8.2:

Employee expressly promises and agrees that, during the period of his employment under this Agreement and for a period of twenty four (24) months immediately following the termination of such employment, Employee will not use for the benefit of anyone other than Employer or divulge to any person who is not then an employee in good standing of Employer, any list of customers, formulae, processes, composition, improvements, customer lists, inventions, trade secrets, business policies, business practices, business methods, confidential information, or specialized information or data belonging to or relating to the business or affairs of Employer or its products and services or customers, and learned, acquired, or coming to Employee's knowledge while in the employ of employer.

¶ 9:

> Employee expressly covenants, agrees, and recognizes that all inventions, trade secrets, formulae, processes, products, services, confidential information, research, intellectual property, advertising and promotional material, in relation to any chemical formulae, chemical process, service or product developed or researched in whole or part by Employee, whether on duty or after working hours, from the time of employment or association with the employer until termination, is the sole and exclusive property of Employer and the Employee hereby transfers and assigns to the Employer any rights Employee may at any time have with respect thereto, including but not limited to any patent, copyright, trademark, tradename, trade secret or other rights.

In its motion, Plaintiffs identify specific conduct it argues to be "proof positive" that Defendant breached the terms outlined in ¶¶8.2 and 9. Pls.' Br. pp. 4-12 (Docket No. 57). [2] Plaintiffs reference seven (7) PowerPoint slides it argues to be Amerex's property pursuant to ¶ 9 that were used by Defendant while employed at Amerair. *Id*. In addition, Plaintiffs proffer an email containing an attachment of handwritten notes apparently made by an employee of Southern Companies during an Amerair sales presentation as evidence that Defendant improperly disclosed confidential Amerex customer information. *Id*. Ex. L. Plaintiffs further argue that Defendant's continuing use of confidential Amerex information will cause "ongoing damage that is currently unquantifiable." *Id*. at p. 12.

In opposition, Defendant argues that the slides in question were all 1) derived from original artwork accumulated over the course of his career prior to joining Amerex; 2) derived from publically available data published by Solvay Chemicals; 3) originally given to Defendant by Komline-Sanderson Company; or 4) prepared by Defendant to illustrate Amerair's personnel experience. Def.'s Br. Opp. Pp. 13-17 (Docket No. 74).

---

[2] Although styled as a motion for summary judgment on Plaintiffs' breach of contract claim, the Court notes that Plaintiffs' motion is a partial motion for summary judgment limited to Paragraphs 8.2 and 9 of the Employment Agreement – the only provisions for which Plaintiffs offer any argument or evidence.

To prevail on a breach-of-contract claim a party must prove (1) the existence of a contract, (2) the breach of a duty imposed by that contract and (3) damages. *Williams v. Nationwide Mut. Ins. Co.,* 750 A.2d 881, 884 (Pa. Super. Ct. 2000). There is no issue regarding the existence of a contract between Amerex and Defendant. Although disfavored in Pennsylvania, restrictive covenants are enforceable where they are "incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent." *Victaulic Co. v. Tieman,* 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Hess v. Gebhard & Co.,* 570 Pa. 148, 808 A.2d 912, 917 (Pa. 2002)). The Court finds that the Employment Agreement was executed incident to an employment relationship between the parties, and the restrictions imposed are reasonably necessary and reasonably limited.[3]

As for the breach of a duty imposed by that contract, the Court finds there to be genuine issues of material fact as to whether Defendant's actions constitute breach of the non-disclosure provision and/or the six-month non-compete provision. As to the non-disclosure provision, Plaintiffs argue that summary judgment in its favor is appropriate because no issue of material fact as to Defendant's breach exists. The Court does not agree.

Defendant has presented evidence to refute Plaintiffs' claims. Namely, Defendant advances four arguments supporting his defense that the slides in question are not Amerex

---

[3] In his Opposition, Defendant argues that the Employment Agreement is not enforceable because it was executed while Defendant was an employee of A-4 Acquisition and cannot be enforced by Amerex. (Docket No. 65). In reliance, Defendant cites to *Hess v. Gebhard & Co. Inc.*, 808 A.2d 912 (Pa. 2002) for authority that an assignment of an employee's non-compete covenant is invalid in connection with the sale of assets where the covenant does not contain a specific assignability provision. The Court finds Defendant's reliance on *Hess* misplaced. As pointed out by both Plaintiffs and Defendant, the application of the holding in *Hess* has been limited by Pennsylvania courts as well as the Third Circuit to cases where the employer seeks to assign a restrictive covenant as part of a sale of assets. The facts of this case show that Amerex went through a series of mergers and name changes, not a sale of assets – a fact Defendant concedes in his briefing.

property. Def.'s Br. Opp. Pp. 13-17. The Court finds that Defendant's evidence creates an issue of fact for the jury to decide.

In similar fashion, the Court finds a genuine issue of material fact to exist regarding Defendant's alleged breach of the non-compete provision. Plaintiffs' have advanced several pieces of evidence to support its argument, the most persuasive being a December 10, 2010 email sent by Defendant to certain Amerex customers stating: "I look forward to working together with you in the second half of 2011. Until then my e-mail contact is jfoster121@hotmail.com." Pls.' Br. Opp., Ex. L. A reasonable jury could find that Defendant's email (and other cited behavior) constitutes a breach of the non-compete provision. *See e.g., Merrill Lynch v. Napolitano*, 85 F. Supp.2d 491, 496 (E.D. Pa. 2000); *Compass Bank v. Hartley*, 430 F. Supp. 2d 973 (D. Ariz. 2006). As such, the Court will deny both motions for summary judgment.

B. Misappropriation of Trade Secrets Claim

Defendant seeks summary judgment on Plaintiffs' misappropriation of trade secrets claim. In its opposition, Plaintiffs identify the trade secrets at issue. (Pls.' Br. Opp. pp. 23-24)). Specifically, Plaintiffs allege that Defendant is in possession of a list of programs representing "the total package of spray dryer absorber technology" and encompassing "all vessel and process design for a complete spray dryer absorber business". *Id*. In addition, Plaintiffs allege Defendant is in possession of "information relating to Amerex'[s] customers." *Id*. Plaintiffs argue that the identified information is entitled to trade secret protection under Pennsylvania law.[4]

---

[4] In its complaint, Plaintiffs seem to raise a choice of law issue by stating that Defendant's conduct violated both Pennsylvania and Illinois Trade Secret statutes. Plaintiffs effectively abandon the argument for application of Illinois law in it briefing of the issue and only advance arguments under the Pennsylvania Uniform Trade Secrets Act, 12 Pa.C.S.A. § 5301, *et seq*. The Court, therefore, will limit its analysis to Pennsylvania law.

7

To support its claim, Plaintiffs state the "economic value" of the program lists and information relating to Amerex customers is "enormous" and provides a list of "development h[ou]rs" required to develop the programs. *Id*., Ex. E. Plaintiffs further state that the alleged trade secrets are neither generally known to, nor ascertainable by any Amerex competitor. *Id*. at p. 23. As evidence of security measures employed to protect the alleged trade secrets, Plaintiffs cite to the confidentiality and non-disclosure agreements required of all Amerex employees. The Court finds this evidence insufficient to defeat summary judgment.

The Pennsylvania Uniform Trade Secrets Act ("PUTSA") creates a statutory cause of action for injunctive relief, compensatory damages and exemplary damages for the actual loss caused by misappropriation of trade secrets and the unjust enrichment caused by such misappropriation. A misappropriation of trade secrets claim is essentially two-fold: first, a party must establish that a trade secret exists as defined under 12 Pa.C.S.A. § 5302 and next, must prove that the trade secret was misappropriated as defined under 12 Pa.C.S.A. § 5303.

The relevant factors used to determine whether information is a trade secret under the PUTSA are "substantial secrecy and competitive value to the owner." *O.D. Anderson, Inc. v. Cricks,* 815 A.2d 1063, 1070 (Pa. Super. Ct. 2003) (quoting *Den-Tal-Ez, Inc. v. Siemens Capital Corp.,* 566 A.2d 1214, 1228 (Pa. Super. Ct. 1989)). Here, Plaintiffs fail to establish that the information identified by it constitutes a trade secret under the PUTSA. Plaintiffs offer no specific evidence that the program lists or customer information is crucial to its business, and is an actual secret to its business.

Not only do Plaintiffs fail to proffer sufficient evidence to establish the existence of a trade secret, Plaintiffs also fail to prove that, even if a valid trade secret did exist, Defendant misappropriated the trade secrets. In its brief, Plaintiffs do not point to a single action by

Defendant regarding the program lists or confidential information related to Amerex's customers. Plaintiffs offer no evidence as to Defendant's improper acquisition, or disclosure of the identified trade secrets.[5] As such, the Court will grant Defendant's motion for summary judgment on Plaintiffs' trade secret claim.

C. Breach of Fiduciary Duty Claim

Defendant seeks summary judgment on Plaintiffs' claim that he breached his fiduciary duty to Amerex during his employment negotiations with Amerair and during his post-resignation activities. To state a cause of action for breach of fiduciary duty, a plaintiff employer must allege and ultimately prove (1) a fiduciary duty on the part of the [employee], (2) a breach of that duty, (3) an injury, and (4) a proximate cause between the breach and the injury." *Alpha School Bus Company, Inc., v. Wagner*, 910 N.E. 2d 1134 (1st Dist. 2009).[6]

The parties do not dispute that Defendant's fiduciary duty arises from his role as shareholder. Defendant argues that Section 7.90(a) of the Illinois Business Corporations Act of 1983 allows shareholders to tender a waiver of obligations, and that Defendant tendered a waiver immediately following his resignation. Def.'s Br. pp. 15-19. The Court agrees with this argument and holds that under Illinois law, Defendant's December 2010 resignation letter (coupled with Defendant's March 2011 confirmation letter) serves as proper waiver of his fiduciary duties solely by virtue of his status as a shareholder. This leaves the issue of Defendant's actions prior to January 4,

---

[5] Misappropriation is defined to include: (1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of another without express or implied consent by a person who: (i) used improper means to acquire knowledge of the trade secret; (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was: (A) derived from or through a person who had utilized improper means to acquire it; (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake. 12 Pa.C.S.A. § 5302.

[6] In its briefing, Plaintiffs' advance its breach of fiduciary duty claim under Illinois law.

2011, the effective date of his resignation. The Court finds no reason why the issue of whether Defendant's pre-resignation activities constitute a breach of his fiduciary duties should not be presented to a jury for evaluation. *See Sebastian v Zuromski*, 1993 WL 78713 (ND Ill. 1993); *Rex-ford Rand Corp v. Ancell*, 58 F3d 1215 (7th Cir. 1995) (both imposing fiduciary obligations on minority shareholders).

The Court will grant Defendant's motion for summary judgment regarding his fiduciary duties to Plaintiffs as it relates to activities that occurred after January 4, 2011, and will deny Defendant's motion for summary judgment as it relates to activities that occurred prior January 4, 2011. As such, the Court also denies Defendant's motion for summary judgment on his declaratory judgment claim.

   D. Invasion of Privacy Claim

Plaintiffs seek summary judgment on Defendant's invasion of privacy claim. Defendant alleges that Plaintiffs invaded his privacy when it accessed a November 30, 2010 offer of employment letter from Amerair and a December 1, 2010 memorandum of understanding from Amerair -- both stored on Defendant's Amerex-issued cellular telephone. *See* Answer. Defendant argues that access and ultimate retrieval of the documents required Plaintiffs to access his personal email account. *Id.* Plaintiffs offer affidavits and deposition testimony to support its position that the contents of Defendant's company-issued cellular telephone were copied and the device then "cleaned" for the purposes of reissuance to other Amerex employees. Pls.' Br. pp. 6-9. Plaintiffs further state that the documents in question were not obtained by accessing Defendant's private email, but were accessed and retrieved from a folder to which the documents were saved on the telephone hard drive. *Id*.

Pennsylvania has adopted the 2d Restatement of Torts, and under Pennsylvania law, in order to state a claim for intrusion upon seclusion, the Defendant must establish: 1) an intentional intrusion; 2) upon private concerns; 3) which was substantial and would be highly offensive to a reasonable person and 4) which caused mental suffering, shame or humiliation. Plaintiffs first contend that Defendant has no reasonable expectation of privacy with respect to documents saved on his Amerex issued cellular telephone and that even if Defendant did have an expectation of privacy, Defendant cannot establish that the alleged invasions were intentional and "highly offensive to a reasonable person." *DeBlasio v. Pignoli*, 918 A.2d 822, 825 (Pa. Cmwlth. 2007); *Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.,* 809 A.2d 243, 247 (3d Cir. 2002).

Under the Restatement, a defendant is subject to liability only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs. Defendant offers no evidence that Plaintiff's invaded a private seclusion (his personal email). As stated by Plaintiff's 30(b)(6) witness, the files in question were copied from information left in a folder on Defendant's company issued cellular telephone. Pls.' Br., Ex. J. The telephone was then "wiped clean" and reassigned to another employee. *Id.* The only evidence Defendant offers in rebuttal is an unspecified and speculative theory that someone at Amerex somehow accessed his personal email.[7] Plaintiffs have established that there is no genuine issue for trial related to Defendant's invasion of privacy claim. As such, the Court will grant Plaintiffs' motion for summary judgment on Defendant's invasion of privacy claim.

E. Defendant's Amerex Stock Options

---

[7] The citations to the record in Defendant's Opposition (Docket No. 74) do not establish a genuine issue of material fact. In his deposition, Defendant states that his personal email was not "programmed into the phone for automatic access," but Defendant fails to offer any evidence that Plaintiff gained access to his personal email.

11

Plaintiffs seek summary judgment on Defendant's claim for declaratory judgment related to the tender request of his stock options. As convincingly argued by Plaintiffs, Defendant's counterclaim in this Court is duplicative as it is the subject of an Order compelling arbitration issued by the Circuit Court of the Sixteenth Judicial Circuit for Kane County, Illinois. (Docket No. 54, Ex. M). The court will stay proceedings related to Defendant's claim regarding the tender request of his stock options pending final resolution of the Circuit Court proceeding.[8]

---

[8] Plaintiffs' argue for dismissal under the doctrine of collateral estoppel, however, the Court finds that the Order of the Circuit Court of the Sixteenth Judicial Circuit for Kane County, Illinois, directing the parties to arbitration, is not a final order for purposes of collateral estoppel analysis. *Anderson v. C.I.R.*, 698 F.3d 160, 166 (3d Cir. 2012); *Alliance Syndicate, Inc. v. Parsec, Inc.*, 741 N.E.2d 1039, 1047 (1st Dist. 2000); *Clausen Co. v. Dynatron/Bondo Corp.,* 889 F.2d 459,465–66 (3d Cir. 1989) (interlocutory orders cannot form the basis for claims of either *res judicata* or collateral estoppel).

## II. ORDER

For the reasons stated above, the Court hereby **ORDERS** that Plaintiffs' motion for summary judgment on its breach of contract claim (Docket No. 56) is **DENIED**; Plaintiffs' motion for summary judgment on Defendant's counterclaims (Docket No. 54) is **GRANTED IN PART AND DENIED IN PART**.  Plaintiffs' motion on Defendant's claim for invasion of privacy is **GRANTED** and Defendant's claim for declaratory judgment as to his stock options is **STAYED** pending final resolution of the case pending in the Circuit Court of the Sixteenth Judicial Circuit for Kane County, Illinois.  FURTHERMORE, Defendant's motion for partial summary judgment (Docket No. 60) is **GRANTED IN PART AND DENIED IN PART**.  Defendant's motion on Plaintiffs' misappropriation of trade secrets claim is **GRANTED**, Defendant's motion on Plaintiffs' breach of fiduciary duty claim is **GRANTED** as is relates to activity that occurred after January 4, 2011, and Defendant's motion as it pertains to his declaratory judgment claim related to his fiduciary duties to Amerex is **DENIED**.

**IT IS SO ORDERED**.

                                                s/ Cathy Bissoon
                                                Cathy Bissoon
                                                United States District Judge

December 14, 2012

cc (via e-mail):

All counsel of record.